IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jimmy Lawrence Nance, )<br>                              )<br>           Petitioner, )<br>   v.                          )<br>                              )<br>Linda Thomas, Warden, )<br>                              )<br>          Respondent. ) | Civil Action No. 2:15-cv-5099-BHH<br><br>**<u>ORDER</u>** |

Petitioner, Jimmy Lawrence Nance ("Petitioner"), proceeding *pro se,* filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) Petitioner has an extensive record of filing repetitive post-conviction motions and petitions. In this his fourth § 2241 petition, he seeks to challenge his 1993 federal conviction and life sentence for the first degree murder of a United States Postal Service employee engaged in the performance of her official duties, in violation of 18 U.S.C. §§ 1111 and 1114. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(d) (D.S.C.), the action was referred to United States Magistrate Judge Mary Gordon Baker for initial review and a Report and Recommendation ("Report"). Magistrate Judge Baker recommends that the § 2241 petition be dismissed *without prejudice* and without requiring respondent to file a return, based on Petitioner's failure to show that a motion pursuant to 28 U.S.C. § 2255 is inadequate or ineffective to test the legality of his detention. (ECF No. 7.) Petitioner filed objections to the Report and the matter is ripe for review.

## **<u>BACKGROUND</u>**

The Report sets forth in detail the relevant facts and standards of law on this matter and the Court incorporates them without recitation (*See* ECF No. 7 at 1-7),

1

summarizing here only in relevant part. On March 23, 1993, Petitioner was convicted by a jury of violating 18 U.S.C. § 1111 and 1114 for the first degree murder of a United States Postal Service employee engaged in the performance of her official duties. *See United States v. Nance*, C/A No. 92-cr-135-R (W.D. Va.). Petitioner was sentenced to life imprisonment. Since that time, Petitioner has pursued any number of post-conviction filings, including but not limited to: a direct appeal; at least four motions pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence; a Federal Rule of Civil Procedure 60(b) motion, or in the alternative, a motion to reopen his previous § 2255 motion; a writ of mandamus attempting to compel the "reopening" of his previous § 2255 motion; at least four 28 U.S.C. § 2241 petitions, some of which were construed as § 2255 motions and transferred to the trial court over Petitioner's objections, requests for reconsideration, and appeal; a motion in the trial court for DNA testing of evidence, including hair samples; a § 2255 motion demanding the recusal of the presiding judge and a related writ of mandamus; and a "Petition and Motion for a Writ of Coram Nobis and/or Audita Querela". (*See* ECF No. 7 at 3-7 (detailing Petitioner's filings and associated case captions).) All of these filings were unsuccessful. In nearly every instance, Petitioner appealed or attempted to appeal the unfavorable result in the Fourth Circuit Court of Appeals or the Supreme Court of the United States, as applicable, and in each instance his appeal or writ was dismissed or denied. (*See id.*)

Petitioner filed the instant § 2241 petition on December 15, 2015. (ECF No. 1.) In general, Petitioner alleges that: (1) an evidence inventory document he discovered by way of a Freedom of Information Act request to the Federal Bureau of Investigation demonstrates that the Chief Postal Inspector Ryland Saxby and Sheriff Wayne Pike

gave false testimony to the grand jury regarding the location of the victim's purse in order to obtain an indictment that was unsubstantiated; (2) the government failed to prove all elements of the offense of conviction because the post office in which the murder occurred was located on real property leased from private owners and therefore could not constitute the "special maritime and territorial jurisdiction of the United States" as referenced in the punishment provision of 18 U.S.C. § 1111; and (3) the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose "negative control tests," the documentation for which is no longer in the FBI file, and by knowingly destroying DNA evidence that Petitioner would have sought to have tested given developments in the field of forensic science. (*Id.* at 4-12.) Based on these assertions, Petitioner claims that he "has been denied one full and fair 2255 to test the validity of his conviction, and he presents a claim of actual innocence, hence the district court must entertain this § 2241 on the merits." (*Id.* at 2.)

On April 11, 2016, the Magistrate Judge issued her Report recommending that the § 2241 petition be dismissed without prejudice and without requiring Respondent to file a return because Petitioner's challenge to his conviction and sentence cannot satisfy the savings clause of § 2255, and is therefore not appropriate for review under § 2241. (ECF No. 7.) Petitioner timely filed objections (ECF No. 25) to the Report. The Court has carefully reviewed the record, the Report, and the objections. Finding the Report to be accurate, and the objections to be without merit, the Court will enter judgment accordingly.

## **STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to the district court. The

recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("[D]*e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."). In the absence of a specific objection, the Court reviews the Magistrate's conclusions only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). As previously noted, Petitioner filed objections (ECF No. 25) in this case, and the Court has thus conducted the requisite *de novo* review.

In reviewing these pleadings, the Court is mindful of Petitioner's *pro se* status. When dealing with a *pro se* litigant, the Court is charged with liberal construction of the pleadings. *See, e.g., De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a petitioner's clear failure to allege facts that set forth a cognizable claim, or that the Court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

4

## **DISCUSSION**

Upon review, Petitioner's objections provide no basis for this Court to deviate from the Magistrate Judge's recommended disposition. The petition for a writ of habeas corpus pursuant to § 2241 must be dismissed *without prejudice* for the reasons set forth in the Magistrate Judge's concise and thorough report.[1]

It is well established that federal prisoners are required to pursue post-conviction relief by filing a motion pursuant 28 U.S.C. § 2255. *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (citing *In re Vial*, 115 F. 3d 1192, 1194 (4th Cir. 1997)). A motion pursuant to § 2255 is generally used to challenge a conviction and/or sentence, whereas a § 2241 habeas petition is generally used to challenge the execution or implementation of a federal prisoner's sentence. *Vial*, 115 F.3d at 1194 n.5 (stating that § 2241 is typically used to challenge the manner in which a sentence is executed); *United States v. Miller*, 871 F.2d 488, 489-90 (4th Cir. 1989) (distinguishing between attacks on the "computation and execution of the sentence [and] the sentence itself"). However, § 2255 contains a "savings clause" that allows federal prisoners to proceed pursuant to § 2241 when a motion under § 2255 would prove "inadequate or ineffective to test the legality of [a prisoner's] detention."[2] A § 2255 motion is deemed "inadequate or ineffective" when three criteria are met:

---

[1] As always, the Court says only what is necessary to address Petitioner's objections against the already meaningful backdrop of a thorough Report of the Magistrate Judge. Comprehensive recitation of law and fact exists there.

[2] Section 2255(e) provides:

> An application for a writ of habeas corpus in behalf of a prison who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention*.

28 U.S.C. § 2255 (emphasis added).

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction;
> (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and
> (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000).[3] The Fourth Circuit's decision in *Jones* opened a narrow gateway to § 2241 relief for prisoners who become actually innocent of their offenses of conviction due to a subsequent change in law that renders the acts for which they were found guilty not a crime. *See, e.g.*, *Farrow v. Revell*, 541 Fed. App'x 327, 328-29 (4th Cir. 2013); *Darden v. Stephens*, 426 Fed. App'x 173, 174 (4th Cir. 2011); *Rice*, 617 F.3d at 807; *United States v. Poole*, 531 F.3d 263, 267 n. 7 (4th Cir. 2008). "In short, under the *Jones* rule a federal prisoner is entitled to pursue a § 2241 motion only when he had no opportunity to utilize a § 2255 motion to take advantage of *a change in the applicable law*." *Rice*, 617 F.3d at 807. Conversely, "[i]f . . . the prisoner had an unobstructed procedural shot at filing a § 2255 motion to take advantage of such a change, a § 2241 motion is unavailable to him, and any otherwise unauthorized habeas motion must be dismissed for lack of jurisdiction." *Id.*

The Magistrate Judge correctly found that the Fourth Circuit has, on at least one occasion, denied Petitioner permission to file a successive § 2255 motion. (*See* ECF

---

[3] The "gatekeeping provisions" of § 2255 are as follows:

> (h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain-
>> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

6

No. 7 at 9); *see also* 28 U.S.C. § 2255(e), *supra* n.2. In his current § 2241 filing, Petitioner has simply relabeled claims that he has unsuccessfully pursued in previous § 2255 motions and other filings. Petitioner has not alleged, much less shown, any change in applicable law. When properly construed, his claims of "actual innocence" amount to assertions that he did not commit the acts of which he was found guilty. Irrespective of the strength or merit of such assertions, this type of innocence claim has *nothing to do with a change in law* and therefore cannot be brought by a federal prisoner in the form of a post-conviction § 2241 filing pursuant to *Jones*. Rather, this type of claim must be brought in the form of a § 2255 motion. *See Rice*, 617 F.3d at 807.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") introduced certain parameters that must be satisfied prior to filing a successive § 2255 motion. Generally speaking, the AEDPA amended § 2255 in a manner that placed "much more stringent limits on a federal prisoner's ability to make second or successive § 2255 motions." *In re Goddard*, 170 F.3d 435, 436 (4th Cir. 1999). These limitations, however, do not constitute a suspension of the writ of habeas corpus:

> In [*Felker v. Turpin*, 518 U.S. 651 (1996)], the Supreme Court determined that the provision of the AEDPA limiting second and successive habeas corpus petitions by persons convicted in state courts does not constitute a suspension of the writ. Rather, the Court stated that the limitations imposed by the AEDPA were simply an illustration of the longstanding principle that the power to award the writ by any of the courts of the United States, must be given by written law. The limitations on habeas corpus relief from state-court judgments of conviction contained in the AEDPA, the Court reasoned, amounted to an entirely proper exercise of Congress' judgment regarding the proper scope of the writ and fell well within the compass of the evolutionary process surrounding the doctrine of abuse of the writ. [Likewise, the Fourth Circuit has concluded] that the reasoning of the Court with respect to limitations on second and successive habeas petitions pursuant to § 2254 applies with equal force to the identical

> language in § 2255. Accordingly, the limitations imposed on second and successive § 2255 motions by the AEDPA do not constitute a suspension of the writ.

*Vial*, 115 F.3d at 1197-98 (internal citations, quotation marks, and modifications omitted).

The mechanism for requesting permission from the Circuit Court for leave to file a successive § 2255 application is laid out in 28 U.S.C. § 2244(b)(3), and is relatively straightforward. "*Before* a second or successive application permitted by this section is filed in the district court, the applicant *shall* move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A) (emphasis added). Such a motion is determined by a three-judge panel of the Circuit Court, no later than thirty days after its filing, and will only be granted if the Circuit Court "determines that the application makes a prima facie showing that the application satisfies the requirements of [§ 2244(b)]." 28 U.S.C. § 2244(b)(3)(B)-(D).

Thus, a prima facie showing of the requirements of § 2244(b) is a condition precedent to a federal prisoner's ability to file a successive § 2255 application. The applicant must convince a three-judge panel at the Circuit Court that his new § 2255 claim makes a prima facie case that either: (A) "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable";  or, (B) that "(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and "(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the

8

underlying offense." *See* 28 U.S.C. § 2244(b)(2). If an applicant fails to make such a prima facie showing, his motion for leave to file a successive § 2255 application will be denied for failure to satisfy these "gatekeeping" provisions.

In this most recent iteration of Petitioner's panoply of post-conviction filings, he has circumvented the statutory structure established by AEDPA, which is intended to place reasonable limitations on the scope of a prisoner's ability to continue to collaterally attack his conviction and/or sentence without adequate justification. As indicated above, the Fourth Circuit's *Jones* decision provides only a narrow path by which a prisoner can obtain post-conviction § 2241 relief outside the normal prerequisites of §§ 2255 and 2244. This narrow path is limited to instances in which the law relevant to a petitioner's conviction has changed such that the petitioner is no longer guilty of the offense, where that change has been made retroactively applicable, and where the petitioner is prevented from raising a challenge through § 2255 because the change is not one of constitutional dimension. *See Jones*, 226 F.3d at 333-34. Petitioner has not raised any such claims in the instant § 2241 petition. Accordingly, the Magistrate Judge concluded that the present petition fails to satisfy the requirements of the savings clause of § 2255(e) so as to provide this Court with jurisdiction to hear the § 2241 petition, and that it must, therefore, be summarily dismissed. (*See* ECF No. 7 at 9-10); *Rice*, 617 F.3d at 807 (if a federal prisoner brings a § 2241 petition that does not fall within the scope of the savings clause, then the district court must dismiss the "unauthorized habeas motion . . . for lack of jurisdiction").

In his objections, Petitioner does not squarely respond to the Magistrate Judge's conclusion that this Court lacks jurisdiction to consider his § 2241 petition. Rather,

Petitioner avers, *inter alia*, that the Magistrate Judge was "not authorized to 'conduct the initial review' of a Title 28 U.S.C. § 2241" and "acted ultra vires as petitioner was not asked nor would he consent to a magistrate 'assuming the respondents [sic] role in these proceedings' interposing views inconsistent with law before the . . . true respondent is heard from with an answer as the Statute commands." (ECF No. 25 at 1.) Petitioner insists that a § 2241 petition is the correct vehicle for his claims, but in support makes only conclusory assertions that he "has an absolute right to the Writ of Habeas Corpus, Article 1, Section 9, Clause 2, of the United States Constitution," that the AEDPA "did not alter the right to redress," and that "[i]f the petition is liberally construed, which is appropriate for challenging the BOP's execution of his sentence, petitioner states a valid claim for relief." (*Id.* at 3.) Petitioner further argues he "has not ever had one full and fair opportunity until now to submit his claim of actual innocence." (ECF No. 25 at 4.)

The Court finds that the Magistrate Judge correctly concluded that the instant § 2241 petition does not satisfy the savings clause of § 2255. Petitioner has not pointed to any substantive change in law such that the conduct of which he was convicted is no longer deemed criminal. *See Prousalis v. Moore*, 751 F.3d 272, 275 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 990 (2015). In this circumstance, the Court is without jurisdiction to hear Petitioner's § 2241 claim. *See Rice*, 617 F.3d at 807. Petitioner insists that § 2255 is inadequate and ineffective to test the legality of his detention because the government has allegedly engaged in "*Brady* violations" by destroying forensic materials prior to their retesting using modern methods, by failing to disclose "negative control tests" conducted during the course of DNA analysis in preparation for trial, and by

10

eliciting false witness testimony in order to obtain an indictment. (ECF No. 25 at 4-6.) But claims of this type are precisely those envisioned as requiring certification from the Circuit Court prior to filing a successive § 2255 motion in order to ensure that a prima facie case has been pled, thereby avoiding the waste of judicial resources and imposing reasonable limits on a federal prisoner's ability to collaterally attack his conviction and sentence *ad infintum*. *See* 28 U.S.C. § 2255(h)(1) and § 2244(b)(2)(B). Petitioner has not obtained such certification here, and his prior attempts to gain certification with respect to the same claims he makes now have all been rejected.

The remedy afforded by § 2255 is not rendered inadequate or ineffective merely because an individual has been unable to obtain relief under that statute. *Jones*, 226 F.3d at 333; *Vial*, 115 F.3d at 1194 n.5 (citing *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir.1988)). Neither is the savings clause triggered by the fact that an individual is procedurally barred from filing a § 2255 application. *See Rice*, 617 F.3d at 807; *Vial*, 115 F.3d at 1194 n.5 (citing *Garris v. Lindsay*, 794 F.2d 722, 726-27 (D.C. Cir. 1986) (per curiam)). If Petitioner is to ever obtain the relief he seeks, he will first need to convince a three-judge panel at the Fourth Circuit that he has satisfied the gatekeeping provisions of § 2255(h) and obtain certification to file a successive § 2255 motion.

The Court would be remiss if it did not address the portion of Petitioner's "actual innocence" theory that is premised on the assertion that the government never satisfied one of the elements of proof at the trial; not because the theory has merit, but because the Court is concerned that Petitioner will continue to advance this argument in future filings, here and elsewhere, and waste judicial resources. Specifically, Petitioner claims that the postal building in which the murder occurred was located on real property

11

leased to the U.S. Government by private owners, and therefore, the murder did not occur "within the special maritime and territorial jurisdiction of the United States" as referenced in the punishment provision in 18 U.S.C. § 1111(b). (*See* ECF Nos. 1 at 9-10; 23 at 2-3, 5; 24 at 2.) The Magistrate Judge considered this argument in the Report and rejected it, noting that actual innocence "means factual innocence, not mere legal insufficiency." (*See* ECF No. 7 at 10 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).)

Petitioner objects by arguing that, "§ 1114[] does not have a penalty of its own, it directs a sentencing court to [] § 1111 for punishment," that "§ 1111[] has only one penalty provision which is [] § 1111(b)," and that "§ 1111(b) is a [s]tatute that is restricted to 'special maritime and territorial jurisdiction of the United States' which is defined at 18 U.S.C. § 7(3)." (ECF No. 25 at 7.) According to Petitioner, "[t]he sentencing court relied on § 1111(b) when it imposed a LIFE term, however, the court committed structural error because government failed to prove the locus of the offense was within the protected area defined in 18 U.S.C. § 7(3)." (*Id.*) Specifically, Petitioner avers that "Crocket post office is not one of these areas hence, 18 [U.S.C.] § 1111(b) cannot apply." (*Id.* at 9.) Petitioner cites "an unbroken line of cases from *Markham v. United States*, 215 F.2d 56 (4th Cir. 1954) to *United States v. Higgs*, 663 F.3d 726 (4th Cir. (2012)" as purportedly "supportive of [his] reading of 18 U.S.C. § 1111(b)." (ECF No. 25 at 10.) Notably, Petitioner does not cite any cases involving murder of a federal employee during the course of official duties in violation of § 1114, the substantive offense at issue in his own conviction.

Petitioner has advanced his "private property" argument in the past, and had it

12

thoroughly debunked by the trial court. *See United States v. Nance*, No. 7:92CR00135, 2013 WL 594230, at *4-5 (W.D. Va. Feb. 15, 2013) (denying Petitioner's motion for production of documents, in which various discovery requests were aimed at supporting the "private property" theory). Nonetheless, the Court will explain again why this theory is, and will continue to be, unsuccessful, in the hopes of deterring future iterations of post-conviction filings in which Petitioner advances the same incorrect arguments.

Petitioner's "private property" theory misunderstands the nature of his conviction. Petitioner was *not* convicted for murdering the postmistress within the special maritime and territorial jurisdiction of the United States, as referenced in 18 U.S.C. § 1111(b),[4] but rather for the first degree murder of a U.S. employee engaged in the performance of her official duties, in violation of 18 U.S.C. § 1111(a) and § 1114. Whereas, § 1111(b) provides the applicable punishments for murder in the first and second degree committed "within the special maritime and territorial jurisdiction of the United States," § 1111(a) simply defines first degree murder under federal law. Moreover, § 1114 states: "Whoever kills . . . any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in or on account of the performance of official duties . . . shall be punished— (1) in the case of murder, as provided under section 1111 . . . ." 18 U.S.C. § 1114. Given the substance of Petitioner's conviction, the trial court's jurisdiction was founded on its original jurisdiction over specifically enumerated federal offenses, *not* territorial jurisdiction. *See, e.g.*, *United States v. Peltier,* 446 F.3d 911, 914 (8th Cir. 2006) (explaining that "§ 1114 criminalizes the killing of federal officers engaged in the

---

[4] To the extent the Magistrate Judge's Report was unclear, incorrect, or incomplete on this point (*see* ECF No. 7 at 10-11), it is hereby modified in accordance with this Order.

13

performance of their official duties" and is "'a statute of general applicability' in which the situs of the crime [is] not an element") (citations omitted); *United States v. Adams,* 581 F.2d 193, 200 (9th Cir.), *cert. denied,* 439 U.S. 1006 (1978) (describing as "frivolous" the argument that § 1114's reference to § 1111 "limits federal jurisdiction over the murder of postal employees to those occurring in the special maritime and territorial jurisdiction of the United States" and affirming the defendant's conviction for a murder occurring in the middle of the victim's postal route).

Thus, it is irrelevant whether the post office in Crockett, Virginia (where this murder occurred) is a "needful building," as described in 18 U.S.C. § 7(3), and whether the United States had exclusive or concurrent jurisdiction of the land on which it is located. In other words, one can assume that Petitioner is correct that the land and the building are *not* the territorial jurisdiction of the United States, and any reviewing court's conclusion will remain the same—the trial court's jurisdiction was founded on a specifically enumerated federal offense. *See* 18 U.S.C. § 3231 (district courts "have original jurisdiction . . . of all offenses against the laws of the United States").

The same reasoning dictates that the location of the crime was neither an element to be proved during the guilt/innocence phase of Petitioner's trial, nor a sentencing factor. While it is true that § 1114 refers to § 1111 for its sentencing parameters (in that it provides a person who commits murder in violation of § 1114 "shall be punished . . . as provided under section 1111"), courts have routinely held that this reference *only incorporates the punishment provisions* of § 1111(b) (i.e., for first degree murder, a sentencing range from life imprisonment to death), and *does not incorporate* a requirement that the murder be committed within "the special maritime

14

and territorial jurisdiction of the United States." *See, Peltier,* 446 F.3d at 914 (§ 1114's reference to § 1111 "is intended to incorporate the punishment prescribed in § 1111(b), not its jurisdictional provision; the language in § 1114 cannot reasonably be taken to incorporate that portion of § 1111(b) that does not deal with punishment"); *United States v. Brunson,* 549 F.2d 348, 351 n.1 (5th Cir. 1977), *abrogated on other grounds by United States v. Bengivenga,* 845 F.2d 593 (5th Cir. 1988) (stating that "§ 1114 incorporates only the penalty, and not the jurisdictional, provisions of § 1111 . . . [which] conclusion makes it unnecessary to decide whether a post office is within the 'special maritime and territorial jurisdiction of the United States'"); *United States v. Sablan*, 976 F. Supp. 2d 1190, 1196 (E.D. Cal. 2013) (holding that federal murder under § 1111 is not a lesser included offense of murder of a U.S. employee under § 1114 because § 1111's jurisdictional element requires proof of a fact not found in § 1114); *Hinkson v. United States,* 2012 WL 3776023, *14 (D. Idaho Aug. 28, 2012) (defendant's "attempt to graft the jurisdictional element from § 1111 . . . onto § 1114 is unavailing. Section 1114 incorporates only the penalties from" § 1111(b)); *see also*, *United States v. Dixon,* No. 2:14-CR-00236, 2016 WL 3248508, at *9 n.10 (S.D.W. Va. June 13, 2016) (finding, where defendant plead guilty to witness tampering by killing in violation of 18 U.S.C. § 1512(a)(1)(C), that § 1111 was only incorporated to ascertain the punishment for the substantive offense, not for its jurisdictional element).

The Fifth Circuit Court of Appeals explained in *Brunson* that to rule otherwise would mean that § 1114 is limited not only to murders of federal employees in the discharge of their duties, but only to that limited subset of such murders that occur within the special maritime and territorial jurisdiction of the United States. *See Brunson*,

15

549 F.2d at 351 n.1. This reading of § 1114 is untenable, and would be contrary to the long-established understanding of the scope of that statute. *See, e.g.*, *United States v. Rivera,* 513 F.2d 519, 521 n. 1, 530 (2d Cir.), *cert. denied,* 423 U.S. 948 (1975) (holding evidence was sufficient to sustain defendant's conviction for, *inter alia*, first-degree murder of an undercover federal narcotics agent in a hotel room, in violation of §§ 1111 and 1114).

From what the Court can discern in Petitioner's filings, the genesis of his "private property" theory, and his corresponding misunderstanding regarding the nature of his conviction, is the following language from the indictment in his case:

> That on or about September 18, 1992, in the Western Judicial District of Virginia, *in a United States Post Office in Wythe County, Virginia, a place within the special maritime and territorial jurisdiction of the United States*, the defendant, JIMMY LAWRENCE NANCE, with premeditation and malice aforethought, did willfully and deliberately kill and murder Donna Jean Stevenson, an employee of the United States Postal Service, while she was engaged in or on account of the performance of her official duties.

(ECF No. 1-1 at 6 (emphasis added).) The presence of the jurisdictional element from § 1111(b) within the text of the charge of which Petitioner was found guilty makes it entirely understandable that he would believe U.S. territorial jurisdiction was a necessary element of proof at his trial. But however justified and well-meaning Petitioner's belief, it is mistaken, and the territorial jurisdiction language was superfluous and irrelevant to the ultimate finding of guilt. *See Brunson*, 549 F.2d at 351 n.1 (where indictment relating to robbery and murder of postmistress in post office charged violation of § 1114, reference in indictment relating to killing "within the special maritime and territorial jurisdiction of United States" was inconsequential, rendering it unnecessary to decide whether § 1111(b) covered post office murders since the penalty

16

range for killing of a federal employee engaged in the course of their duties is the same as the penalty range for federal murder under § 1111). Correspondingly, the absence of a jury instruction on § 1111(b)'s jurisdictional element (*see* ECF No. 1-1 at 13-14) was not erroneous.

The remainder of Petitioners objections are either irrelevant to the matters currently before the Court (*see, e.g.*, ECF No. 25 at 8 (Petitioner arguing, incorrectly, with the Magistrate Judge's summary of procedural developments relative to his prior filings)), or conclusory in nature and do not point the Court to any specific flaw in the Magistrate Judge's reasoning (*see, e.g.*, *id.* (Petitioner highlighting a typographical error in the Report, wherein the Magistrate Judge accidentally referenced "18 U.S.C. § 111" rather than "18 U.S.C. § 1111")). They raise no colorable indication of error in the Magistrate Judge's analysis, and the Court need not address them further.

## CONCLUSION

After *de novo* review of the Report, the record, and the applicable law, the Court finds that Petitioner's objections are without merit, and therefore overrules them. Accordingly, the Court adopts the Report and incorporates it herein to the degree not inconsistent. Correspondingly, it is ordered that Petitioner's § 2241 petition (ECF No. 1) is dismissed *without prejudice* and without requiring Respondent to file a return.

**IT IS SO ORDERED.**

                                        /s/Bruce Howe Hendricks
                                        United States District Judge

Greenville, South Carolina
December 8, 2016